# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | |
|---|---|
| LICK BRANCH UNIT, LLC and<br>FOREXCO, INC.,<br><br>     Plaintiffs,<br><br>v.<br><br>JIM REED, CHARLES BRUCE REED, and<br>JAMES LUEKING,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)    **CASE NO. 3:13-cv-00203**<br>)<br>)<br>)<br>)<br>)<br>) |

## FIRST AMENDED COMPLAINT

COME NOW Plaintiffs Lick Branch Unit, LLC and Forexco, Inc. (collectively, "Plaintiffs") and, for their cause of action against the Defendants Jim Reed, Charles Bruce Reed, and James Lueking (collectively, the "Defendants"), state to the Court as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Lick Branch Unit, LLC is a Kentucky limited liability company authorized to do business in the State of Tennessee. Lick Branch Unit, LLC's principal place of business is located at 37 Court Square, Whitley City, KY 42653.

2.     Plaintiff Lick Branch Unit, LLC has only one member, which is Citi Energy, LLC. Citi Energy, LLC is a Delaware limited liability company with its principal place of business at 2122 Enterprise Road, Greensboro, North Carolina 27408. Citi Energy, LLC is governed and controlled solely by an individual resident of the State of North Carolina.

3.     Plaintiff Forexco, Inc. is a Texas corporation authorized to do business in the State of Tennessee. Forexco, Inc.'s principal place of business is located at 2122 Enterprise Road, Greensboro, North Carolina 27408.

4.     Defendant Jim Reed is a citizen and resident of Tennessee.  Upon information and belief, Defendant Jim Reed resides at 1059 Silcox Ford Road, Helenwood, Tennessee 37755.

5.     Defendant Charles Bruce Reed is a citizen and resident of Tennessee.  Upon information and belief, Defendant Charles Bruce Reed resides at 4100 Helenwood Loop Road, Helenwood, Tennessee 37755.

6.     Defendant James Lueking is a citizen and resident of Tennessee.  Upon information and belief, Defendant James Lueking resides at 1141 Grape Rough Road, Oneida, Tennessee 37841.

7.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  Specifically, this Court has jurisdiction under 28 U.S.C. § 1331 for determination of a federal question under the Racketeer Influenced And Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and this Court has jurisdiction of Plaintiffs' additional claims against Defendants under 28 U.S.C. § 1367 as they are so related that they form part of the same case or controversy. Additionally, this Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332, as complete diversity of citizenship exists between Plaintiffs and Defendants, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

8.     Venue is proper in this Court under 28 U.S.C. § 1391, as all Defendants may be found in this district.  In addition, a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL BACKGROUND

9.     This case involves the ongoing interference by Defendants with Plaintiffs' right to conduct oil and gas extraction operations at the Lick Branch Unit oil field in Scott County, Tennessee (the "Unit").

10.     This interference includes Defendants Jim Reed and James Lueking repeatedly misrepresenting their interests in the Unit to various third parties relevant to and involved with the operation of the Unit in a concerted effort to disrupt and/or halt Plaintiffs' lawful oil and gas operations at the Unit.  Jim Reed and James Lueking's misrepresentations concern the outcome of state-court litigation initiated in Scott County Circuit Court, captioned *James Lueking & Jim Reed v. Cambridge Resources, Inc., PDC Resources, Inc., Oneida Gas Inc. & Lick Branch Unit Joint Venture* ("*Lueking v. Cambridge*").  Jim Reed and James Lueking have stated to various third parties that a January 13, 2009 Order from the Scott County Circuit Court in *Lueking v. Cambridge* awarded them ownership of certain "Working Interests" (defined below) in the Unit. Defendants have used Jim Reed and James Lueking's baseless claims of ownership of Working Interests to maliciously interfere with operations at the Unit and shut off power to the Unit, causing damages to the Plaintiffs.

11.     Despite Jim Reed and James Lueking's misrepresentations, the January 13, 2009 Order from *Lueking v. Cambridge* does not make any reference to Working Interests in the Unit.  No court has ever awarded any Working Interests in the Unit to Jim Reed or James Lueking.  In fact, Jim Reed and James Lueking never asserted a claim for Working Interests in the Scott County Circuit Court in *Lueking v. Cambridge*.

**The Unit**

12.     Tennessee's Oil and Gas Board[1] (the "Board") has the specific power to create drilling and production units made up of separate tracts of property.   Tenn. Code Ann. § 60-1-202(a)(4)(M)-(O); *see also* Tenn. Comp. R. & Reg. 1040-01-01-.01; Tenn. Comp. R. & Reg.

---

[1] The Tennessee Oil and Gas Board was recently merged with the Tennessee Water Quality Control Board. Accordingly, references to the Board herein may be considered as references to the new Board of Water Quality, Oil and Gas.

1040-05-01.01-.03. The Board can create such units only after determining that doing so (i) will promote conservation of natural resources, (ii) will prevent waste, (iii) will increase the ultimate recovery of oil and gas from the affected pool, (iv) is economically feasible, and (v) will protect the correlative rights of the owners of land and mineral rights owners. Tenn. Comp. R. & Reg. 1040-05-01.01.

13. The Lick Branch Unit is a unitized oil and gas field created by Order of the Oil and Gas Board in 1977 and governed by a Board-approved Unit Agreement (the "Unit Agreement"). A copy of the Board-approved Unit Agreement is attached hereto as **Exhibit A**[2].

14. As described in the Unit Agreement, there are two classes of interest holders in the Unit: "Working Interest Owners," who own "Working Interests" in the Unit, and "Royalty Owners," who own "Royalty Interests" in the Unit. The Working Interest Owners and the Royalty Owners receive specified portions of the proceeds of oil and gas operations at the Unit. The Working Interest Owners, however, are tasked with managing oil and gas operations at the Unit, and pay for operating expenses out of the proceeds they receive. The Unit Agreement obligates the Working Interest Owners to reasonably develop the land in the Unit to produce oil. The Unit Agreement grants various rights and powers to the Working Interest Owners, including the power to designate a unit operator to direct day-to-day development and operation of the Unit (the "Unit Operator" or the "Operator"). The Unit Agreement also grants the Working Interest Owners and the Unit Operator easements and rights to access the property within the Unit in order to conduct operations.

15. As of the date the Unit was created, the Royalty Interests were vested in the individual landowners who owned real property within the Unit. As of the date the Unit was created, the

---

[2] Exhibits A- S to the First Amended Complaint are identical to the exhibits to the original Complaint (Docket Entry No. 1) and are incorporated herein by reference.

Working Interests in the Unit were vested in oil exploration companies that held mineral rights under oil and gas leases that existed at the time the Unit was formed (such leases are referred to herein as the "Pre-Unit Leases").

16.     Plaintiff Lick Branch Unit, LLC currently owns one hundred percent (100%) of the Working Interests in the Unit, making it the sole Working Interest Owner.  Lick Branch Unit, LLC acquired the Working Interests in the Unit in two separate transactions with previous Working Interest Owners.  Specifically, Lick Branch Unit, LLC first acquired Working Interests in the Unit through a merger transaction with Cambridge Resources, Inc., a Kentucky corporation, on or about December 12, 1998.[3]  Lick Branch Unit, LLC purchased all remaining Working Interests in the Unit from PDC Resources, Inc. on or about June 6, 2011.

17.     In or around August 2011, in accordance with its rights as the Working Interest Owner under the Unit Agreement, Lick Branch Unit, LLC appointed Plaintiff Forexco, Inc. as the Unit Operator.   The Board approved Lick Branch Unit, LLC's appointment of Forexco, Inc. in March 2012.

18.     Forexco, Inc. has a contract with Lick Branch Unit, LLC pursuant to which Forexco, Inc. directs day-to-day operations at the Unit in its role as Unit Operator.

19.     Defendants are three of the Royalty Owners under the Unit Agreement.  Upon information and belief, Jim Reed and James Lueking jointly own one tract of property in the Unit which they acquired in or around 2004.  Upon information and belief, Jim Reed and members of his family, including Charles Bruce Reed, independently own other, smaller tracts in the Unit. The Defendants' predecessors in title executed certain Pre-Unit Leases on October 26, 1965 (the "Bertram Lease" which relates to the Jim Reed/James Lueking property) and January 18, 1967

---

[3] Cambridge Resources, Inc. had acquired all of the Working Interests previously held by Oneida Gas, Inc. in an earlier transaction.

(the "Reed Lease" which relates to the Reed family property), as lessors. When the Lick Branch Unit was formed in 1977, all of the parties to the Bertram and Reed Leases, or their then-existing successors and assigns, committed their interests in the oil and gas beneath the surface of the Unit to the Unit in exchange for Royalty Interests (in the case of Defendants' predecessors-in-title) or Working Interests (in the case of the oil companies). (*See* <u>Ex. A</u>.) Those Working Interests were part of the Working Interests acquired by Lick Branch Unit, LLC as described in Paragraph 16 above.

20.     The Defendants are three of approximately nineteen Royalty Owners in the Unit. Upon information and belief, some of the other Royalty Owners live on fixed incomes and rely on their royalty payments as a significant portion of their incomes. If oil production at the Unit ceases, the Royalty Owners do not receive royalty payments.

21.     The Unit undisputedly produced oil steadily from its formation through 1994. In 1994, in an attempt to maximize oil production at the Unit, the then-Operator implemented an "Enhanced Oil Recovery Project." The project involved the injection of supplemental, or non-native, natural gas into the Unit to increase underground pressure and thus facilitate the extraction of additional quantities of oil. The injection of such supplemental gas is expressly contemplated and authorized by the Unit Agreement. The injection and storage of gas was also approved and authorized by an Order of the Board dated May 24, 1996. A copy of the May 24, 1996 Order of the Board is attached hereto as **Exhibit B**.

<u>**Prior Legal Actions**</u>

22.     Over the past fifteen or so years, the Defendants have gone to great lengths to interfere with the rights of Plaintiffs and the previous Working Interest Owners and Operators of the Unit. Defendants' efforts have included direct physical and verbal altercations with individuals

involved in operating the Unit, repeatedly locking the gate used for ingress and egress by the individuals involved in operating the Unit, and filing legal actions aimed at halting operations at the Unit.

23.     Defendants have been involved in several legal actions, both judicial and administrative, with Working Interest Owners and Operators at the Unit.  At no point in any of these actions did any court or administrative body award ownership of any Working Interests in the Unit to the Defendants.

### A. *Reed v. Cambridge Resources, Inc.*
### (filed in Scott County Chancery Court, March 19, 1997)

24.     In 1997, Jim Reed, on his own behalf and as attorney-in-fact for enumerated family members including Charles Bruce Reed, filed a lawsuit in Scott County Chancery Court against then-Operator Cambridge Resources, Inc., and then-Working-Interest-Owners PDC Resources, Inc. and Oneida Gas, Inc. (the "Chancery Court Action").  True and correct copies of Jim Reed's Complaint and July 27, 1999 Amended Complaint in the Chancery Court Action are attached hereto as **Exhibit C**.  The Complaint (as amended) raised a number of allegations relating to operations at the Unit, many of which focused on the placement and use of a compressor on Jim Reed's property in the Unit in connection with the Enhanced Oil Recovery Project.  In addition, Jim Reed's Complaint (as amended) prayed for a declaration that the pre-Unit Reed Lease and the Unit Agreement were terminated.  At no point in the Complaint (as amended) did the plaintiffs in the Chancery Court Action assert any claim to Working Interests in the Unit.

25.     In the summer of 2000, Jim Reed moved for a temporary restraining order and, subsequently, a temporary injunction to, among other things, prohibit the defendants in the Chancery Court Action from placing a new compressor on the existing compressor site at the Unit.  Earlier that year, Jim Reed had parked a personal vehicle on the compressor site and built

a small structure around the vehicle in order to prevent then-Operator Cambridge Resources, Inc. from placing a new compressor at that site. Jim Reed's motions came on the heels of a physical altercation between Jim Reed and a representative of one of the previous Working Interest Owners at the compressor site.

26.     Jim Reed's request for a temporary injunction was denied after a hearing on August 1, 2000. The Scott County Chancery Court issued an *Order Denying Temporary Injunction* stating that the "Defendants [Working Interest Owners and Unit Operator] may install their new compressors at the present compressor site area, taking reasonable care to minimize operational noise therefrom," and further ordering that the "Plaintiffs shall remove all of their personal property from the portions of the lease premises upon which Defendants are conducting their oil and gas operations by 12:01 p.m. Tuesday, August 8, 2000, and should make only a lawful use of their properties without interfering with Defendants' oil and gas operations."

27.     No trial was held in the Chancery Court Action. It was voluntarily dismissed on February 13, 2007. At no point did the plaintiffs in the Chancery Court Action assert any claim to ownership of any Working Interests in the Unit.

### B.  *Lueking v. Cambridge Resources, Inc.* (filed in Scott County Circuit Court, February 16, 2007)

28.     On February 16, 2007, Jim Reed, again acting on his own behalf and as attorney-in-fact for enumerated family members including Charles Bruce Reed, filed a new action in Scott County Circuit Court ("*Lueking v. Cambridge*"). Added as a plaintiff was James Lueking. James Lueking was a plaintiff in the action because he and Jim Reed had acquired a joint interest in a separate tract in the Unit in or around 2004, as described in Paragraph 19 above.

29.     In *Lueking v. Cambridge*, James Lueking and Jim Reed named Cambridge Resources, Inc., PDC Resources, Inc., Oneida Gas, Inc., and Lick Branch Unit Joint Venture as the

defendants. They did not name Lick Branch Unit, LLC as a defendant even though Lick Branch Unit, LLC had acquired a portion of the Working Interests in the Unit at the time the action was filed. PDC Resources, Inc. was the only defendant in *Lueking v. Cambridge* that owned any Working Interests in the Unit.

30. The *Lueking v. Cambridge* Complaint was substantially similar to Jim Reed's Complaint in the Chancery Court Action, but it omitted any request that the Court declare the Unit Agreement terminated. The *Lueking v. Cambridge* Complaint focused instead on Pre-Unit Leases, claiming that, due to an alleged break in the commercial production of oil and gas in 1994-95 during implementation of the Enhanced Oil Recovery Project, the pre-Unit Bertram and Reed Leases terminated pursuant to Tenn. Code Ann. § 66-7-103(a)(1). Among other things, James Lueking and Jim Reed sought (i) a declaration that the pre-Unit Bertram and Reed Leases were terminated, and (ii) monetary damages for the *Lueking v. Cambridge* defendants' operations at the Unit following the alleged termination of the Bertram and Reed Leases, including "judgment for all proceeds derived by [the *Lueking v. Cambridge* defendants'] unauthorized use of [Jim Reed and James Lueking's] property, including all oil and gas sales, gas storage and transportation fees received by [the *Lueking v. Cambridge* defendants] after June 1, 1995." In addition, Jim Reed also claimed damages for the breach of a separate verbal lease he claimed to have entered with one of the *Lueking v. Cambridge* defendants. A copy of the *Lueking v. Cambridge* Complaint is attached hereto as **Exhibit D**. At no point in the Complaint did the *Lueking v. Cambridge* plaintiffs assert any claim to any Working Interests in the Unit.

31. The trial court bifurcated *Lueking v. Cambridge* into two trials. The first trial, in December 2008, was conducted *solely* on the issue of whether there was a six-month break in the "commercial production" of oil and gas at the Unit during the implementation of the Enhanced

Oil Recovery Project in 1994-95.  The jury concluded that there was a break in "commercial production."  The trial court subsequently entered a non-final interim *Order* dated January 13, 2009, declaring that the pre-Unit Bertram and Reed Leases were terminated effective September 1, 1995 due to a break in "commercial production" pursuant to Tenn. Code Ann. § 66-7-103.  A copy of the January 13, 2009 Order is attached hereto as **Exhibit E**.  The January 13, 2009 Order does not reference the Unit Agreement or any Working Interests in the Unit.

32.     The second trial was scheduled for November 2010.  The trial was originally intended to address three issues:  (i) to determine what, if any, damages Jim Reed and James Lueking could recover as a result of the termination of the Bertram and Reed Leases; (ii) to adjudicate Jim Reed and James Lueking's claim for alleged damage to the surface of their property; and (iii) to adjudicate Jim Reed's claim for breach of the separate verbal lease he alleged he entered with the then-Unit-Operator.  With respect to the termination of the Bertram and Reed Leases, Jim Reed and James Lueking sought (1) trespass damages from the *Lueking v. Cambridge* defendants for the injection and storage of natural gas underground at the Unit; (2) nuisance damages from the *Lueking v. Cambridge* defendants for the use of the compressor on the Reed family property in the Unit; and (3) trespass damages from the *Lueking v. Cambridge* defendants for all oil and gas operations conducted at the Unit since September 1, 1995.

33.     In a motion filed before the second trial, the *Lueking v. Cambridge* defendants addressed the conflict between the rights granted to the Working Interest Owners and Unit Operator pursuant to the Unit Agreement and the damages sought by James Lueking and Jim Reed for the termination of the pre-Unit Bertram and Reed Leases.  James Lueking and Jim Reed's claims for damages were premised on the theory that the defendants' sole authority for conducting oil and gas operations on their property was the pre-Unit Bertram and Reed Leases.  That theory was

(and is) incompatible with the express provisions of the Unit Agreement. The Unit Agreement was not terminated or affected in any way by the January 13, 2009 Order, and it explicitly authorized both the defendants' ongoing operations and the defendants' right to receive their share of the proceeds from operations. The Unit Agreement also explicitly authorized the injection of supplemental gas into the Unit, which entails the use of a compressor. Accordingly, the *Lueking v. Cambridge* defendants moved the trial court to dismiss the case and allow all further matters in controversy to be decided by the Board because they impact the operation and management of the Unit which the Board created.

34.     Even though the Scott County Circuit Court did not grant the *Lueking v. Cambridge* defendants' motion, it ultimately dismissed or barred Jim Reed and James Lueking's trespass and nuisance claims. In both the pre-trial hearing on the motion as well as in the course of the subsequent trial, the Scott County Circuit (1) dismissed the claim for trespass damages for the injection and storage of natural gas underground at the Unit; (2) dismissed the claim for nuisance damages for the use of the compressor on the Reed family property in the Unit; and (3) barred the claim for trespass damages for the defendants' operations at the Unit since September 1, 1995. The trial court made abundantly clear that it was not terminating or affecting the Unit Agreement, and that, to the extent Jim Reed and James Lueking's claims implicated the Unit Agreement, Reed and Lueking should go to the Oil and Gas Board.

35.     The second trial went forward only on Jim Reed's claim for breach of the separate verbal lease he allegedly entered into in 1994 with the then-Unit-Operator. The jury found for Jim Reed on the verbal lease claim and he was awarded damages, as reflected in the Scott County Circuit Court's *Judgment* entered in November 2011. A copy of the Judgment is attached hereto as **Exhibit F**. The Judgment did not incorporate the provisions of the January 13, 2009 Order.

Like the  January 13, 2009 Order, the Judgment does not disturb or reference ownership of the Working Interests in the Unit.

36.     At no point during the first or second trial did counsel for Jim Reed and James Lueking assert any claim for Working Interests in the Unit, nor did Jim Reed and James Lueking seek to amend their Complaint to assert any such claim.

37.     The Judgment in *Lueking v. Cambridge* was appealed to Tennessee's Court of Appeals. The Court of Appeals affirmed the rulings of the Scott County Circuit Court (described in paragraphs 34-35 above), but reduced the amount of damages awarded to Jim Reed on the verbal lease issue.  A copy of the Tennessee Court of Appeals' Opinion, filed on December 21, 2012, is attached hereto as **Exhibit G**.  At no point does the Court of Appeals Opinion address ownership of the Working Interests in the Unit, nor does it award ownership of any Working Interests to Defendants.

### C. *Tennessee Oil and Gas Program – Objection to Change of Operator Process* (objection dated August 31, 2011)

38.     In or around August 2011, Plaintiff Lick Branch Unit, LLC moved to designate Plaintiff Forexco, Inc. as Operator of the Unit.  A "Change of Operator" application was filed with the Tennessee Oil and Gas Program.[4]

39.      Defendants Jim Reed and James Lueking filed an objection to Lick Branch Unit, LLC's "Change of Operator" application dated August 31, 2011.  Jim Reed also filed a follow-up letter addressed to Mr. Mike Burton, Supervisor of the Oil and Gas Program and dated September 2,

---

[4] The Tennessee Oil and Gas Program is a program of the TDEC Water Resources Division.  The Program exercises day-to-day regulatory authority over oil and gas operations in the state pursuant to the regulations promulgated by the Tennessee Oil and Gas Board (now the Tennessee Board of Water Quality, Oil and Gas).  Decisions of the Program are subject to review by the Board.  *See* Tenn. Code Ann. § 60-1-101 *et seq.*

2011, in which Reed elaborated on the grounds for the objection. A true and correct copy of Jim

Reed's September 2, 2011 letter is attached hereto as **Exhibit H**.

40.     In his September 2, 2011 letter, Jim Reed stated that, as a result of the Scott County

Circuit Court's January 13, 2009 termination of the pre-Unit Bertram and Reed Leases, he and

his family became owners of sixty-six percent (66%) of the Working Interests in the Unit. (Ex.

H.)

41.     The Oil and Gas Program rejected Jim Reed's objection letter and approved the Change

of Operator application. A letter dated March 14, 2012 from TDEC Assistant General Counsel

David Henry to counsel for Jim Reed, Mr. Johnny V. Dunaway, explained the grounds for this

decision. A true and correct copy of TDEC's March 14, 2012 letter to Johnny V. Dunaway is

attached hereto as **Exhibit I**. Among other reasons, TDEC's letter states:

> [W]e did not consider the January 13th, 2009 Circuit Court Order
> that Mr. Reed submitted along with his protest to be a valid basis
> for submitting the issue to the Oil and Gas Board and/or
> administratively denying the changes. We simply did not interpret
> it as valid grounds to support denying LBU's working interest
> operators to appoint a new operator. That order simply voided the
> leases. That determination—in addition to the clarification stated
> by Judge McAfee on October 20, 2011[5]—led us to decide that the
> Order alone was legally insufficient grounds to present to the
> Board to contest the changes.

(Ex. I at 1.)

### D. *Lick Branch Unit, LLC v. Reed*
### (filed in Scott County Circuit Court, September 21, 2011)

42.     In September 2011, Plaintiff Lick Branch Unit, LLC filed a tort action against

Defendants in Scott County Circuit Court based on their ongoing interference with operations at

---

[5] The October 20, 2011 hearing referenced by TDEC occurred in the *Lick Branch Unit, LLC v. Reed* litigation described in paragraphs 41 to 44 below. Relevant excerpts from that hearing are attached hereto as Exhibit K.

the Unit. A true and correct copy of Lick Branch Unit, LLC's Complaint is attached hereto as **Exhibit J**. As described in the Complaint, on several occasions, the Reeds and/or Lueking locked the gate used by the Operator to access the Unit, locking the Operator and its contractors and employees in or out of the Unit. The Reeds and/or Lueking also tampered with the Operator's lock on said gate. Further, on multiple occasions, the Reeds and/or Lueking verbally harassed the Operator's contractor and the contractor's employees. For instance, in March 2010 Jim Reed made threatening comments about shooting one of the contractor's employees. Further, Jim Reed threateningly told a representative of the Operator's contractor that he was "lucky to be walking around." In addition, Lick Branch Unit, LLC's Complaint asserted claims for intentional interference with business relationships and interference with contractual relationships (under both statutory and common law), based on Jim Reed and James Lueking's misrepresentations concerning the outcome of the *Lueking v. Cambridge* litigation. Lick Branch Unit, LLC asked the Court to enjoin Defendants from interfering with Unit Operations under the Unit Agreement.[6]

43.     In an October 20, 2011 hearing in *Lick Branch Unit, LLC v. Reed*, the Court – the very same Court that had earlier issued the January 13, 2009 Order in *Lueking v. Cambridge* – stated, in reference to the Unit Agreement, that "when I ruled in this case, when we had the original trial in this matter over breaching the individual leases that were entered into in '67 or '77, or something along those lines, I thought I made it clear that I didn't think this had anything to do with the pool agreements that were entered into with the State of Tennessee, originally." (Transcript of Hearing at Pages 55-56, relevant excerpt attached hereto as **Exhibit K**.) The

---

[6] The actions for damages in *Lick Branch Unit, LLC v. Reed* were voluntarily nonsuited prior to the filing of this action. The grant of the nonsuit is reflected by the Order of the Scott County Circuit Court dated April 15, 2013. The claims asserted by Lick Branch Unit, LLC in that case are incorporated in this Complaint.

Court further explained that once Jim Reed's family members entered the Unit Agreement, they "basically [were] giving up certain – not all, but certain rights, individual rights. In other words, [they were] going to be restricted from allowing -- from disallowing somebody on [their] property that's operating per the Oil & Gas Board, period, point blank." (Transcript of Hearing at Page 48, relevant excerpt attached hereto as **Exhibit K**.)

44.     In a subsequent hearing held on November 3, 2011, counsel for Defendants stated to the Court that the January 13, 2009 Order terminating the Bertram and Reed Leases resulted in his clients "hav[ing] the right to be the operator because they control about sixty-six percent of the operation as a result of the lease being void." (Transcript of Hearing at Page 7, lns. 1-11, relevant excerpt attached hereto as **Exhibit L**.) Counsel for Lick Branch Unit, LLC stated that "Lick Branch Unit, LLC is the Working Interest Owner and they own one hundred percent of the working interest rights." (Transcript of Hearing at page 8 lns. 21-24, relevant excerpt attached hereto as **Exhibit L**.) In its *Order* following the hearing, the Court found as follows:

> The Court further finds that as of the date of this hearing the current Operator of record of the Lick Branch Unit is P.D.C. Resources,Inc./Cambridge Resources, Inc. whose contact person is Mike Gamblin, President of Cambridge Resources, Inc., which entity has the right to operate the Unit by designation of the Oil and Gas Board **a**nd by designation by the other Plaintiff Lick Branch Unit, LLC, which for purposes of this hearing apparently owns 100% of the working interest of the Unit.

(Order from November 3, 2011 Hearing, attached hereto as **Exhibit M**, at ¶ 2.) The Court granted Lick Branch Unit, LLC the requested injunction, noting that the Defendants "do not have the right to keep out the owners of the working interest in the Unit property from the Unit property." (Ex.M at ¶ 2.)

45.     Per the terms of the injunction granted to Lick Branch Unit, LLC, the Defendants, and all other persons acting on their behalf or at their direction, were barred from locking the gate used

by the Operator and/or the Working Interest Owners to access the Unit, and were likewise enjoined from otherwise unlawfully interfering with operation of the Unit by the Operator and/or Working Interest Owners in any matter at any time. (Ex. M at ¶ 2.)

## The Defendants' Interference with the Unit

46.     The Defendants interfered with Plaintiffs' ability to conduct operations at the Unit by locking the gate to the Unit and otherwise harassing and impeding operations on multiple occasions as described in Paragraph 42 above.

47.     Further, as described above, Defendants Jim Reed and James Lueking interfered with and delayed Lick Branch Unit, LLC's designation of Forexco, Inc. as the Operator of the Unit in late 2011/early 2012.  In objecting to Plaintiffs' Change of Operator Application, Jim Reed stated to the Oil and Gas Supervisor that, as a result of the Scott County Circuit Court's January 13, 2009 Order, they owned 66% of the Working Interests in the Unit.  The delays caused by Jim Reed and James Lueking's interference prevented all oil production at the Unit for a total of 14 days, from October 20, 2011 to November 3, 2011.

48.     On or about December 14, 2011, Defendants Jim Reed and James Lueking sent a letter to Barrett Oil Purchasing, Inc.  Barrett Oil Purchasing buys the oil extracted through Unit operations and pays the Working Interest Owner and Royalty Owners for the oil it purchases in accordance with the terms of the Unit Agreement.  In the December 14, 2011 letter, Jim Reed and James Lueking misrepresented to Barrett Oil Purchasing that they owned 66% of the Working Interests in the Unit, and instructed Barrett Oil Purchasing to direct its payments accordingly.  A true and correct copy of the December 14, 2011 letter to Barrett Oil Purchasing is attached hereto as **Exhibit N**.

49.     In incidents in March, May, and June 2012, employees of Plaintiff Forexco, Inc's contractor were locked in or out of the Unit by Defendants or individuals that Defendants invited onto Unit property, impairing Unit operations.  On August 27, 2012, Defendants Jim Reed and Charles Bruce Reed interfered with Forexco, Inc.'s contractor's work on a new gate at the Unit, running over welding equipment that was being used in the process.

50.     On or about March 4, 2013, the Defendants' attorney, Mr. Johnny V. Dunaway, sent a letter (the "TDEC Letter")  to the "Supervisor" of the Tennessee Oil and Gas Program, Mr. Michael Burton, requesting that Mr. Burton name Jim Reed and James Lueking the Operators of all wells within the Unit through a "Forced Change of Operators" action.  A true and correct copy of the TDEC Letter is attached hereto as **Exhibit O**.  Attached to the TDEC Letter were Applications to Change Operators for each of the wells within the Unit (the "March 2013 Applications to Change Operators").

51.     The TDEC Letter purports to advise the Supervisor of the outcome of the *Lueking v. Cambridge* litigation.  But in describing the outcome, the TDEC Letter misrepresents that "for sixty-six percent (66%) [of the Lick Branch Unit], Reed/Lueking have consolidated their one-eight royalty interest ownership with the seven-eighths (7/8) working interest ownership."  (Ex. O at 2.)  Put differently, the TDEC Letter states, as a matter of fact, that at some point in the *Lueking v. Cambridge* litigation a court divested Lick Branch Unit, LLC of 66% of its Working Interests in the Unit and transferred ownership of those Working Interests to the Jim Reed and James Lueking.  As described in Paragraph 41 above, TDEC rejected this position when the Oil and Gas Supervisor named Forexco, Inc. the Operator of the Unit in March 2012.

52.     Nonetheless, based on the misrepresentation in the TDEC Letter, the Supervisor of the Oil and Gas Program granted the March 2013 Applications to Change Operators, naming Jim

Reed and James Lueking the Operators of all wells within the Unit without providing any notice to Lick Branch Unit, LLC as Working Interest Owner.

53.    In preparing the TDEC Letter, Mr. Dunaway acted as an agent for, and at the direction of, the Defendants.  Defendants are liable for the misrepresentation made by their agent, Mr. Dunaway, in the TDEC Letter and the damages resulting therefrom.

54.    On March 15, 2013, workers arrived at the Lick Branch Unit to find a cable and lock on the gate.  Defendants were at the gate, and represented that they were the operators of the Unit. When a worker for Forexco, Inc. went into the Unit to check the wells and the compressor, the gate was locked behind him and Defendant Charles Bruce Reed followed him throughout the Unit.

55.    On March 20, 2013, Plaintiffs filed an Objection to the March 2013 Applications to Change Operators (the "Objection Letter") with TDEC's Oil and Gas Program.  After receipt of the Objection Letter,  TDEC reversed its earlier decision and reinstalled Forexco, Inc. as the Operator of the Unit, as explained by counsel for TDEC in a letter to Mr. Dunaway dated March 25, 2013 (the "TDEC Decision Letter," attached hereto as **Exhibit P**.)  The TDEC Decision Letter declared that TDEC is "formally rescinding (denying) the Change of Operator approvals" previously given to Jim Reed and James Lueking and ordered that "all operating conditions at the site must return to the status quo pending Board action."  (Ex. P at 1.)

56.    Nevertheless, the misrepresentations made in the TDEC Letter resulted in Forexco, Inc. being completely deprived of its ability to operate the Unit for a total of 10 days, from March 15, 2013 until March 25, 2013.

57.    Moreover, when Forexco, Inc. was deprived of its ability to operate the Unit on or about March 15, 2013, it worked with TDEC to safely and properly shut down operations.  This

entailed shutting down the compressor at the Unit. A TDEC representative also "red-tagged" the oil storage tanks at the Unit (indicating that the oil contained therein was not to be removed). After the TDEC Decision Letter reinstated Forexco, Inc. as the Unit Operator, Plaintiffs could not restart operations immediately. Plaintiffs were forced to spend additional time working through administrative issues resulting from Jim Reed and James Lueking's actions with TDEC and checking and evaluating the equipment at the Unit. After working through these issues, the compressor had to be restarted in order for oil operations at the Unit to resume. Forexco, Inc. contacted the company that handles the compressor on or about April 3, 2013, but the company was not able to return to the Unit to restart the compressor until April 8, 2013. Unit operations resumed on April 9, 2013. Thus, the Defendants' interference prevented all oil production at the Unit for 25 days, from March 15, 2013 until April 9, 2013.

58. During the time that Forexco, Inc. was improperly deprived of its ability to operate the Unit, Defendants engaged in a number of additional activities intended to interfere with Unit operations.

59. Defendant James Lueking sent a letter dated March 18, 2013 to Barrett Oil Purchasing, Inc. A true and correct copy of this letter is attached hereto as **Exhibit Q**. In the letter, James Lueking requested that Barrett Oil Purchasing provide Defendants with the names, addresses, and percentages of the Royalty Owners, Override Interest Owners and the Working Interest Owners in the Lick Branch Unit, along with anyone else receiving monies from the Unit.

60. Defendants Jim Reed and James Lueking next sent a letter dated March 19, 2013 to Forexco, Inc. The letter included the same misrepresentation made in the TDEC Letter, with Jim Reed and James Lueking claiming ownership of 66% of the Working Interests in the Unit. In the

letter, Jim Reed and James Lueking purported to fire Forexco, Inc. as Unit Operator. A copy of this letter is attached hereto as **Exhibit R**.

61.     In addition, one or more of the Defendants contacted Plateau Electric Cooperative, the company that provides electricity to the Unit, and had electrical service to the Unit disconnected. Plaintiffs have not yet been able to get power restored at the Unit, complicating operations. Specifically, two wells on the Unit require electricity to operate. These wells will not produce any oil until power is restored or until alternate power sources are obtained.

62.     Further, upon information and belief, during the time that Forexco, Inc. was improperly deprived of its ability to operate the Unit, the Defendants removed or had someone remove the red tags that TDEC had placed on the Unit wells without proper TDEC approval or supervision. This act allowed Defendants to produce, transport, and/or distribute approximately 210 barrels of oil contained in the Unit storage tanks. Upon information and belief, these actions were taken upon orders of or under supervision of Defendant Charles Bruce Reed. Plaintiffs demand an accounting of all oil produced, transported, and disposed of while Plaintiffs were wrongly excluded from the Unit.

63.     Further, during the time that Forexco, Inc. was improperly deprived of its ability to operate the Unit, the Defendants or someone acting on their behalf installed an electric fence on Unit property. The fence materially interferes with the inspection and maintenance of certain Unit wells, thus hampering Unit operations.

64.     Upon information and belief, Jim Reed has been calling certain other Royalty Owners and soliciting them to join in Defendants' efforts to interfere with Plaintiffs' operations at the Unit.

65.     In total, the deliberate and malicious actions of Defendants described above have halted oil production at the Unit for a total of 39 days, causing damages to the Plaintiffs.  In addition, the Defendants' conduct is causing ongoing damages (i) for lost production from the two electric-powered wells in the Unit and (ii) due to delays caused by Defendants' actions described above.  Finally, the Defendants have forced Plaintiffs to incur thousands of dollars in attorneys' fees to address and correct the problems caused by Defendants' improper actions.

66.     Moreover, the Defendants' actions described above, particularly in shutting off power to the Unit and placing an electric fence to block Unit roads, demonstrate that the Defendants did not intend to continue Unit operations so long as they retained their improper control of the Unit.  Such actions affect and violate the rights of parties to the Unit Agreement, including other Royalty Owners and Plaintiffs.

67.     On or about April 9, 2013, Defendants Jim Reed and James Lueking sent another letter to Forexco, Inc.  A true and correct copy of the April 9, 2013 letter is attached hereto as **Exhibit S**.  In the letter, Jim Reed and James Lueking repeat the same misrepresentation that they own approximately 66% of the Working Interests in the Unit, and state that the Defendants have voted to replace Forexco, Inc. as Operator of the Unit.  Jim Reed and James Lueking requested that Forexco, Inc. sign the Change of Operator Applications attached to their letter.  They further stated that, if the applications were not signed "and no written objection is filed with the Department in writing within ten (10) working days of receipt of this letter, we will seek approval from [TDEC] to change operators without your signature."  Jim Reed and James Lueking, however, had already filed a petition to the Board appealing the denial of the March 2013 Change of Operator Applications.

68.     During a daily inspection on or about Monday, June 17, 2013, workers at the Unit

discovered that someone had manually closed the valves to shut in all of the oil wells that are

accessed through the locked gate on the Reeds' property.  In each case, although the valve was

shut, the well pump remained on and running, increasing the possibility of an oil spill or

explosion.  The Unit Wells on the other side of the river from the Reeds' property (which are not

accessed through the Reeds' gate) were not tampered with.

69.     On Tuesday, June 18, 2013, the Board held a hearing on the March 2013 Change of

Operator Applications.  The Board denied Reed and Lueking's Applications, finding that there

was doubt as to Reed and Lueking's claim to ownership of oil and gas operational rights at the

Lick Branch Unit.

## FIRST CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS

70.     Plaintiffs refer to paragraphs 1 through 69, above, and incorporate those paragraphs

herein by this reference, as though fully set forth in this section.

71.     Plaintiffs have existing or prospective business relationships with: (1) Barrett Oil

Purchasing, Inc., (2) Plateau Electric Cooperative, (3) other Royalty Owners in the Unit, and (4)

TDEC, and more specifically, the Board and the Program (collectively, the "Business

Relations").

72.     Defendants have knowledge of the Business Relations, as evidenced by their interactions

with the Business Relations described above.

73.     In taking the actions described above, Defendants have acted with intent to cause a

breach or termination of the Business Relations.

74.     Defendants' interference with the Business Relations arises from an improper motive or

improper means.

75.     Defendants' tortious intentional interference with the Business Relations caused Plaintiffs to suffer damages.

## SECOND CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACT

76.     Plaintiffs refer to paragraphs 1 through 75, above, and incorporate those paragraphs herein by this reference, as though fully set forth in this section.

77.     In taking the actions described above, Defendants intentionally interfered with multiple legal contracts under Tennessee common law and Tenn. Code Ann. § 47-50-109, including: (1) the contract between Forexco, Inc. and Lick Branch Unit, LLC under which Forexco, Inc. conducts oil and gas operations at the Unit; (2) the contract between Forexco, Inc, and Plateau Electric Cooperative, under which Plateau Electric Cooperative provided electricity to the Unit; and (3) the Unit Agreement (collectively, the "Contracts").

78.     Defendants knew that the Contracts existed when they intentionally interfered with them.

79.     Defendants acted with intent to induce a breach of each of the Contracts or otherwise interfere with each of the Contracts.

80.     Defendants acted maliciously to induce a breach of each of the Contracts or otherwise interfere with each of the Contracts.

81.     Each of the Contracts was actually breached, violated, or the performance of obligations thereunder was halted.

82.     The actions of Defendants were the proximate cause of each of the Contracts being breached, violated, or the performance of obligations thereunder being halted.

83.     Defendants' tortious interference with the Contracts has caused Plaintiffs to suffer damages.

## THIRD CAUSE OF ACTION

## CONVERSION

84.    Plaintiffs refer to paragraphs 1 through 83 above, and incorporate those paragraphs herein by this reference, as though fully set forth in this section.

85.    As a result of the Defendants' actions described above, the Unit and all oil wells and equipment located at the Unit were appropriated by the Defendants for their use and benefit for a total of 24 days, 14 days in October and November 2011 and 10 days in March 2013.

86.    Defendants exercised dominion over the appropriated portion of the Unit and the oil wells and equipment located at the Unit during the 24 days described above in defiance of Plaintiffs' right to the Unit and the oil wells and equipment located at the Unit.

87.    Further, upon information and belief, during the time that Forexco, Inc. was improperly deprived of its ability to operate the Unit, the Defendants removed or had someone remove the red tags that TDEC had placed on the Unit wells without proper TDEC approval or supervision. This act allowed Defendants to produce, transport, and/or distribute approximately 210 barrels of oil contained in the Unit storage tanks.  Plaintiffs demand an accounting of all oil produced, transported, and disposed of while Plaintiffs were wrongly excluded from the Unit.

88.    As a result of the conversion by Defendants of the Unit and the oil wells and equipment located at the Unit, Defendants have caused Plaintiffs to suffer direct and consequential damages for which Defendants are liable.

## FOURTH CAUSE OF ACTION
### NUISANCE

89.    Plaintiffs refer to paragraphs 1 through 88, above, and incorporate those paragraphs herein by this reference, as though fully set forth in this section.

90.    Defendants' conduct and actions described above have annoyed and disturbed Plaintiffs' free use of the Unit.

91.     Defendants' conduct and actions in annoying and disturbing Plaintiffs' free use of the

Unit have been unreasonable.

92.     The nuisance created by Defendants caused Plaintiffs to suffer damages.

### FIFTH CAUSE OF ACTION
### ABUSE OF PROCESS

93.     Plaintiffs refer to paragraphs 1 through 92, above, and incorporate those paragraphs

herein by this reference, as though fully set forth in this section.

94.     Defendants misused or misapplied process when they misrepresented to various third

parties, including TDEC, Barrett Oil Purchasing, Inc. that the January 13, 2009 Order from

*Lueking v. Cambridge* awarded Defendants ownership of certain Working Interests in the Unit.

No court has ever awarded any Working Interests in the Unit to Defendants.

95.     Defendants misused or misapplied the January 13, 2009 Order to accomplish a result

other than the result intended when the Order was issued.

96.     Defendants had an ulterior motive when they misused or misapplied the January 13, 2009

Order.

97.     Defendants' actions in using the January 13, 2009 Order were not a proper use of the

Order.

98.     Defendants' improper use of the January 13, 2009 Order caused, at a minimum, TDEC to

do some collateral thing which TDEC would not regularly have been caused or compelled to do:

the Supervisor of TDEC's Oil and Gas Program initially granted Defendants' Applications to

Change Operators of the wells within the Unit based on the their improper use of the January 13,

2009 Order.

99.     Defendants' abuse of process caused Plaintiffs to suffer damages.

### SIXTH CAUSE OF ACTION

# RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")

100.    Plaintiffs refer to paragraphs 1 through 99, above, and incorporate those paragraphs herein by this reference, as though fully set forth in this section.

101.    Defendants' actions described above violate the Racketeer Influenced And Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

102.    Defendants, together, are part of an "association-in-fact" enterprise. The purpose of the enterprise is to interfere with operations at the Unit by, among other things, misrepresenting that Defendants own Working Interests in the Unit, which they do not own, in order to be named the operators of the Unit and exercise control over the Unit. Defendants Jim Reed, Charles Bruce Reed, and James Lueking, individually, have relationships with one another that have existed long enough to allow them (as associates of the enterprise) to pursue the purposes of the enterprise.

103.    Because operations of the Unit affect interstate commerce, Defendants' enterprise has affected interstate commerce.

104.    Defendants Jim Reed, Charles Bruce Reed, and James Lueking, individually, are persons associated with the enterprise, which has previously (and illegally) interfered with operations at the Unit through the conduct described above, including by misrepresenting that Defendants own Working Interests in the Unit, which they do not own, in order to be named operators of, and exercise control over, the Unit.

105.    Defendants participated, either directly or indirectly, in the conduct or affairs of the association-in-fact enterprise.

106.    Defendants participated with the association-in-fact enterprise through a pattern of racketeering activity by committing multiple acts of mail fraud.

107. Defendants committed mail fraud by writing and mailing letters to TDEC, Barrett Oil Purchasing, Inc., and Forexco, Inc. misrepresenting that they controlled a sufficient portion of the Working Interests in the Unit to name themselves the operators for the Unit.

108. These letters were sent to execute a scheme to mislead and defraud TDEC, Barrett Oil Purchasing, Inc., Plaintiffs, and other third parties involved with the Unit or with interests in the Unit.

109. Defendants' conduct in violation of RICO has caused Plaintiffs to suffer damages.

## SEVENTH CAUSE OF ACTION
### SLANDER OF TITLE

110. Plaintiffs refer to paragraphs 1 through 109, above, and incorporate those paragraphs herein by this reference, as though fully set forth in this section.

111. Plaintiff Lick Branch Unit, LLC owns all of the Working Interests in the Unit.

112. Defendants published false statements about ownership of the Working Interests in the Unit.

113. Defendants published such false statement maliciously in order to interfere with Plaintiff Lick Branch Unit, LLC's rights as owner of all of the Working Interests in the Unit  (and Plaintiff Forexco, Inc.'s rights as the Operator properly appointed by the Working Interest Owner).

114. Defendants' false statements proximately caused Plaintiffs to suffer damages.

## EIGHTH CAUSE OF ACTION
### CIVIL CONSPIRACY

115. Plaintiffs refer to paragraphs 1 through 114, above, and incorporate those paragraphs herein by this reference, as though fully set forth in this section.

116.    Defendants developed a common design to, through their concerted action, maliciously and unlawfully interfere with Plaintiff Lick Branch Unit, LLC's rights as the sole Working Interest Owner in the Unit and Plaintiff Forexco, Inc.'s rights as the Operator of the Unit.

117.    In taking the actions described above, Defendants have committed numerous overt acts in furtherance of this conspiracy described above, including but not limited to locking the gate to the Unit, placing an electric fence on the Unit, and making misrepresentations to multiple parties in order to interfere with Plaintiffs' rights in the Unit.

118.    Defendants' conspiring caused harm to Plaintiffs.

119.    Each Defendant is liable for acts taken by the other Defendant in furtherance of the conspiracy.

## NINTH CAUSE OF ACTION
## WILLFUL, INTENTIONAL, AND MALICIOUS INTERFERENCE WITH PLAINTIFFS' OPERATION OF THE UNIT

120.    Plaintiffs refer to paragraphs 1 through 119, above, and incorporate those paragraphs herein by this reference, as though fully set forth in this section.

121.    "Everyone has the right to establish and conduct a lawful business, and is entitled to the protection of organized society, through its courts, whenever that right is unlawfully invaded. Such right existing, the commission of an actionable wrong is established against anyone who is shown to have intentionally interfered with it, without justifiable cause or excuse. . . . In short, if an act be hurtful to another, intentional, and without legal justification, it is malicious in the true legal sense, . . . therefore unlawful, and is actionable." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 698 (Tenn. 2002).

122.    Plaintiff Lick Branch Unit, LLC is the owner of 100% of the Working Interests in the Unit.  Plaintiff Forexco, Inc. is the properly-appointed Operator of the Unit.  The Unit

Agreement vests Lick Branch Unit, LLC and Forexco, Inc. with certain rights to access and conduct oil and gas operations on property within the Unit.

123.    Nevertheless, in complete disregard of the Plaintiffs' rights, Defendants have taken the actions described above to willfully, intentionally, and maliciously interfere with Plaintiffs' access to and operation of the Unit.

124.    The Defendants' willful, intentional, and malicious interference caused the Plaintiffs to suffer damages.

**TENTH CAUSE OF ACTION**
**ATTORNEYS' FEES**

125.    Plaintiffs refer to paragraphs 1 through 124, above, and incorporate those paragraphs herein by this reference, as though fully set forth in this section.

126.    As discussed above, Defendants initiated an administrative "Forced Change of Operator" action by filing Applications to Change Operators and sending the TDEC Letter to the Supervisor of the Tennessee Oil and Gas Program requesting that they be named the Operators of all wells within the Unit.

127.    In the TDEC Letter, Defendants made tortious misrepresentations to the Supervisor of the Oil and Gas Program that Defendants owned 66% of the Working Interests in the Unit and, therefore, their Applications to Change Operators should be granted.

128.    Relying on the misrepresentation in the TDEC Letter, the Supervisor of Program granted the Applications to Change Operators and named Defendants the Operators of all wells within the Unit without providing any notice to Lick Branch Unit, LLC as Working Interest Owner.

129.    In response to the grant of the Applications to Change Operators, Plaintiffs were forced to participate in the "Forced Change of Operator" action and, through their attorneys, prepare and file the Objection Letter with TDEC in order to protect their interests.

130. After receipt of Plaintiffs' Objection Letter, TDEC reversed its earlier decision and as explained in the TDEC Decision Letter.

131. Because Defendants' tortious misrepresentation forced Plaintiffs to participate in an administrative action to protect their interests, Plaintiffs are entitled to recover their reasonable attorneys' fees incurred in the administrative action.

132. Defendants' misrepresentations similarly forced Plaintiffs to engage counsel to participate in protracted administrative procedures with TDEC in connection with the 2011 "Change of Operator" action.

133. Plaintiffs continue to engage counsel to participate in ongoing legal actions with TDEC, and may need to engage counsel to participate in additional legal actions with third parties to protect their interests from Defendants' interference. For example, legal action may be necessary to have electrical service restored to the Unit.

134. Defendants' misconduct has caused and continues to cause Plaintiffs to incur attorneys' fees to protect their interests.

135. Plaintiffs are entitled to recover the reasonable attorneys' fees which they are forced to incur to protect their interests in the face of Defendants' misconduct.

## PRAYER FOR RELIEF

As a result of the foregoing allegations, Plaintiffs pray for relief as follows:

1. That the Court enter a temporary injunction and a permanent injunction prohibiting Defendants, their agents, and all persons acting in concert with them from directly or indirectly interfering with operations at the Unit, including but not limited to misrepresenting to third parties that the Defendants, or any one of the Defendants, own Working Interests in the Unit.

2.      That the Court grant judgment in favor of Plaintiffs against Defendants for the following relief:

(a)      For compensatory damages, including but not limited to Plaintiffs' actual losses, lost profits, discomfort, inconvenience, emotional distress, and damages to Plaintiffs' reputation and goodwill;

(b)      For punitive damages in an amount to be determined at trial;

(c)      For treble damages arising from Defendants' tortious interference with contract pursuant to Tenn. Code Ann. § 47-50-109;

(d)      For treble damages arising from Defendants' willful misconduct pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964;

(e)      For an accounting of all operations conducted at the Unit, including all oil produced, transported, and disposed of, while Plaintiffs were wrongly excluded from the Unit.

(f)      For payment of Plaintiffs' reasonable attorneys' fees; and

(g)      For the costs of this suit.

3.      That the Court grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ John R. Wingo*
John R. Wingo (Sup. Ct. No. 16955)
Christopher Brett Jaeger (Sup. Ct. No. 28269)
STITES & HARBISON, PLLC
401 Commerce Street, Suite 800
Nashville, TN 37219-2376
Telephone: (615) 244-5200

*Counsel for Plaintiffs Lick Branch Unit, LLC and Forexco, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2013, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system and served upon:

**VIA ECF**
John A. Lucas
W. Edward Shipe
Wagner, Myers & Sanger, P.C.
1801 First Tennessee Plaza
800 S. Gay Street
P.O. Box 1308
Knoxville, TN 37901-1308



*/s/ John R. Wingo*